LAKE FARM *v.* DISTRICT BOARD OF SCHOOL DISTRICT
NO. 2, KALAMAZOO TOWNSHIP.

SCHOOLS AND SCHOOL DISTRICTS—RESIDENTS—CHARITABLE INSTITUTIONS—TUITION.

> Children who are not *bona fide* residents of a family in a
> school district, but are inmates of an institution of a
> charitable nature, in such district, engaged in the support
> and education of homeless and needy minors, and which
> does not contribute, by paying taxes, to the maintenance
> of district schools, are not entitled to attend school in the
> district which has determined not to admit nonresident
> pupils.  1 Comp. Laws, § 4683 (4 How. Stat. [2d Ed.]
> § 9904).

Certiorari to Kalamazoo; Stewart, J.   Submitted
January 27, 1914.   (Calendar No. 25,910.)   Decided
March 26, 1914.

Mandamus by Lake Farm, a corporation, against
the district board of school district No. 2, township
of Kalamazoo, to require respondent to admit to the
public schools two boys, inmates of the relator's in-
stitution.   Writ granted and defendant brings cer-
tiorari.   Reversed, and petition dismissed.

*Lynn B. Mason,* for appellant.

*Sidney S. Wattles (Harry C. Howard,* of counsel),.
for appellee.

KUHN, J.   The relator is a private corporation
organized under the laws of this State.   Its purposes,.
as expressed in article 2 of its articles of association,.
are the "support, care and education of homeless and
needy boys and the promotion of their moral and
material needs."   It is maintained solely by pri-
vate subscriptions and donations, and its principal

office and place of business is in the city of Kalamazoo. For the purposes as above stated it maintains a farm in the township of Kalamazoo, a part of which, including the building in which the boys are kept, is situated within the boundaries of school district No. 2 of the township of Kalamazoo, the respondent herein. Being a charitable and benevolent institution within the meaning of section 9, subd. 1, Act No. 309 of the Public Acts of 1909, and section 7, subd. 4, Act No. 174 of the Public Acts of 1911 (1 How. Stat. [2d Ed.] § 1777 and § 1775), its property is exempt from taxation for any purpose and is not assessed nor taxed for any purpose whatsoever.

It further appears that some 14 boys were being kept and cared for on this farm. Among them were Claude Diamond and Frederick Millen, both of the age of 14 years. Claude Diamond, in April, 1909, being found to be a neglected child, was committed to Lake Farm by an order of the juvenile division of the probate court of Kalamazoo county, and prior to that time he had lived with his mother and stepfather in the city of Kalamazoo. Frederick Millen was likewise committed to Lake Farm in July, 1910, by said probate court, and both of his parents also resided in the city of Kalamazoo. None of the parents of these two boys were residents of school district No. 2, the respondent. Neither of the boys had ever attended the school in this district, and during a part of the school year of 1912 they attended the public schools in the city of Kalamazoo, and during the remainder of the school year had a private tutor provided for them at Lake Farm. At the beginning of the present school year, the two boys were sent to the school maintained in district No. 2 to enroll and attend. The district board, having theretofore duly determined not to receive nonresident pupils into its school, refused admission to the boys. Relator applied to the circuit court of Kalamazoo county for a writ of man-

damus, and the order granting this writ is brought here by certiorari for review.

Section 4683, 2 Comp. Laws (4 How. Stat. [2d Ed.] § 9904), provides as follows:

"All persons residents of any school district, and five years of age, shall have an equal right to attend any school therein; and no separate school or department shall be kept for any persons on account of race or color: Provided, that this shall not be construed to prevent the grading of schools according to the intellectual progress of the pupil, to be taught in separate places as may be deemed expedient."

The sole question here involved is whether or not the inmates of an institution chartered for the support, care, and education of homeless and needy children by their presence in such an institution for the purposes of education and maintenance shall become entitled to free admission to the schools of the district in which it is located, the same as resident children. The circuit judge held that, as the Lake Farm stood in *loco parentis* to the boys, they were entitled to admission, because to deny them that right would not be in accord with the liberal educational policy of the State and would be contrary to public policy. This conclusion must necessarily be based upon the proposition that, as the institution was in *loco parentis* to the children, mere physical presence is all that is necessary to constitute a residence within the meaning of the language of the statute. We are of the opinion, however, that in construing this language some consideration must be had of the occasion and purposes of such presence. The parents of these children were not residents of the district, and the children were brought to the farm for the very purpose of giving them proper support and education, which the institution under its charter had agreed to do. Can it be said that, after having assumed this obligation, the institution can shift this responsibility

and undertaking to the school district and oblige the school district to do what it has undertaken to do? If it can send two of its boys to the district school for free tuition, it can with equal right increase the number, being limited only by the extent of its facilities to accommodate them on the farm. The injustice and unfairness of thus forcing onto a school district the education of the inmates of such an institution can readily be seen. It might easily result in the denial to the children actually residing in the district and whose parents sustain the school of the facilities they would otherwise have therein. This State has from its beginning maintained a liberal educational policy, and it is one of the glories of its people that free education has always been provided for children. The purposes of this institution are indeed laudable and should be encouraged; but, if it finds that it cannot fulfill its undertaking, it should decline to receive more than it can properly support and teach in conformity with its charter, and not attempt to place additional burdens upon others who are under responsibility to provide school facilities for the children who are legally dependent upon them. While we have been unable to find that this question has been raised in this State, our attention has been called to two Pennsylvania cases in which the facts were very similar to the case under consideration. See *Commonwealth, ex rel. Fry,* v. *School District,* 164 Pa. 603 (30 Atl. 507, 26 L. R. A. 581); *Commonwealth, ex rel. Parris,* v. *School District,* 164 Pa. 607 (30 Atl. 509, 26 L. R. A. 584); also, *State* v. *School District,* 10 Ohio St. 448.

The principal case relied upon by appellee is *State* v. *Thayer,* 74 Wis. 48 (41 N. W. 1014). In that case the question was the relationship between the child and the person in whose family it was living. The child had a mother residing in another part of the State, and the school district attempted to apply the

doctrine that its legal residence followed that of its mother. We do not decide in this case that, if these boys became *bona fide* members of a family who resided in the school district and who were in *loco parentis* to them, that would not give them a residence so as to entitle them to school privileges. What we do decide is that nonresidents of a district do not acquire a residence therein for school purposes by becoming inmates of an institution whose purpose, as expressed in its charter, is the support and education of children, and which does not contribute to the support of the schools in that district.

The writ of mandamus should not have issued. The order and judgment of the circuit court is reversed, and the petition of relator for the writ of mandamus is dismissed.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.