GEORGE MEANS, APPELLEE, V. JEANNE MEANS, APPELLANT

17 N. W. 2d 1

FILED JANUARY 5, 1945.  No. 31826.

*R. B. Hasselquist* and *Edmund Scarpino,* for appellant.

*Sam Klaver, contra.*

(441)

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is a divorce action, brought by the husband on the ground of extreme cruelty, in which he asks for the custody of minor child. Defendant filed answer and cross-petition, asking for divorce. Prayer of petition was granted generally, and custody of minor given to plaintiff's mother. Defendant appeals.

The appellant asks reversal of the decree on the grounds that the parties had not lived in Nebraska for two years and the court was therefore without jurisdiction to try the case; that the court erred in dismissing the appellant's cross-petition and refusing to grant her a divorce, and in awarding the custody of the child to the plaintiff's mother.

It appears that Clara Delaney filed an application setting out that her son, the plaintiff, is now serving in the United States army, and unable to appear before the court, or protect the interests and welfare of his minor child, Larry Means, aged two years and six months, and that the defendant is threatening to take said child from her and take him to Iowa, and applicant asks that a restraining order be issued.

The district court for Douglas county thereafter issued an order, in which it found that the plaintiff's mother then had the custody of said child, and has had its custody for a goodly portion of the child's life, and that plaintiff was then serving in the United States army and unable to obtain a release to protect the interest of said child, and therefore the court awarded the care and custody of said child to Clara Delaney, its grandmother, until further order of the court.

George Means, the plaintiff, was born in Omaha, is 24 years old, and has lived there practically all his life. He enlisted in the United States army on November 15, 1938, for three years. He was stationed at different places, and met defendant while stationed at Fort Des Moines. After an acquaintance of about two months, they went to Lancas-

ter, Missouri, and were married on May 4, 1940. He was then transferred to Fort Riley, Kansas, where the child, Larry, was born. The plaintiff's mother, Clara Delaney, was called to Fort Riley from her home in Omaha to help out about six weeks before the child was born, and when the baby was less than two months old she brought it back to Omaha, and it stayed there with her, with the exception of a few weeks, from that time until it was over a year old, she caring for it all that time.

The defendant's mother died when she was four years old, and she was raised by her grandmother in Des Moines. Defendant was 21 years old on March 8, 1944, being the day after the trial in the district court.

The evidence fully sustains all of the charges of cruelty made by plaintiff, and we will not set out in this opinion her objectionable conduct in detail.

The Nebraska statute, section 42-303, R. S. 1943, provides that, when the cause of action arose out of the state, the petitioner must have resided within the state for at least two years before bringing action for divorce.

Defendant filed a special appearance and affidavit, attacking the jurisdiction of the court on the ground of residence, and while defendant's attorney in open court withdrew such special appearance and filed an answer and cross-petition, in which the question of plaintiff's residence was not raised, still we are required to be satisfied on the question of residence.

This plaintiff was born in Omaha, and never resided elsewhere, except temporarily, and never intended to establish a residence elsewhere. He enlisted in the United States army in 1938 at Omaha, which expired in 1941. He was thereafter registered in the draft from his residence in Omaha, and while temporarily working in Des Moines kept his Omaha draft board advised of his address. Plaintiff left Des Moines on April 10, 1943, and came back to his home in Omaha, and made application for re-enlistment in the army there, and was accepted on April 26, 1943, and is now a staff sergeant. The facts appear that his intention

has been at all times to maintain his legal residence in Omaha, and his intention is the controlling element. *Miller v. Sovereign Camp Woodmen of the World,* 140 Wis. 505, 122 N. W. 1126.

"A person cannot change his domicil by removal to a new dwelling-place without an intention to make the new dwelling-place his home." Restatement, Conflict of Laws, sec. 18.

"One's residence is where he has his established home, and to which, when absent, he intends to return. To effect a change of domicile there must not only be a change of residence, but an intention to permanently abandon the former home." *State v. School District,* 55 Neb. 317, 75 N. W. 855. See, also, *Wood v. Roeder,* 45 Neb. 311, 63 N. W. 853; *In re Estate of Meyers,* 137 Neb. 60, 288 N. W. 35.

The residence or domicile of a person in the military or naval service of his country is in no way affected by such service. He does not abandon or lose the residence he had when he entered such service, for his various locations while in the service are fixed by the will of others superior to him in rank. Therefore, he does not ordinarily acquire one at the place he serves. See 17 Am. Jur., sec. 73, p. 634; Annotation, 148 A. L. R. 1413. In Florida, and perhaps a few other states, this general rule has been changed by the legislature. See *Mills v. Mills,* 153 Fla. 746, 15 So. 2d 763; Annotation, 150 A. L. R. 1468.

In the case at bar it is clear, from the evidence and the law, that plaintiff's service in the army, and his temporary abode at various army camps, did not in any way change his legal residence, which was at all times in Omaha, Nebraska.

The pleadings, arguments, and assignments of error raise the question of the custody of this little boy, which was temporarily placed by the court's order in the plaintiff's mother before the trial and then given to her in the decree. She is the one who has had the care of it the greater part of its life, and the defendant, its mother, sent for her to come and get the baby at times, and had always been

willing to have the plaintiff's mother keep the baby up until this divorce action came on for trial. The mother has shown herself unfit to properly care for the child. She was raised by her grandmother, Mrs. Anna Zook, a woman 70 years of age, who says she is willing to give up a little apartment for defendant to live in if she gets custody of her minor child. Mrs. Zook testified that Mrs. Clara Delaney has taken good care of the child when she has had him.

The matter of primary concern, in awarding the custody of a little child, is its welfare and best interests. In the case at bar, its father is serving in the United States army, its mother lives outside the jurisdiction of the court, and has not shown herself willing or able to care for her child. The district court saw all the parties who testified orally before him, and decided in the preliminary application that the plaintiff's mother, Mrs. Clara Delaney, was a fit and proper person to continue to keep the child in her custody. Another district judge later tried the divorce case, and reached the same conclusion on this matter.

This court finds that the father is a fit and proper person, and he is granted the care, custody and control of his minor son, with the right of defendant to visit the child. The court further finds that, during the enforced absence of said father while serving in the army of the United States, the care, nurture, and maintenance of said minor child are, at the father's request, placed in Clara Delaney, the plaintiff's mother.

As modified thus to give the primary custody of the child to the plaintiff, the decree of the district court is hereby affirmed.

AFFIRMED AS MODIFIED.