WALTER A. ANDERSON ET AL., APPELLEES, V. OSCAR CARLSON, JR., ET AL., APPELLANTS, IMPLEADED WITH JOHN E. CARLSON ET AL., APPELLEES.

107 N. W. 2d 535

Filed February 17, 1961. No. 34884.

*Richard E. Person* and *John E. Dier*, for appellants.

*Anderson, Storms & Anderson, Stiner & Boslaugh*, and *Wilbur S. Aten*, for appellees.

*W. C. Conover* and *Franklin D. Carroll*, amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and SPENCER, JJ.

SPENCER, J.

This is an action to declare the Rural Cemetery District Act unconstitutional and to enjoin the collection or levy of a tax. Plaintiffs' motion for summary judgment was sustained. Defendants appeal.

The appeal presents two questions: First, whether a motion for a summary judgment is a proper pleading to raise the question of constitutionality; and second, whether the Rural Cemetery District Act, Chapter 12, article 9, R. R. S. 1943, is constitutional.

Plaintiffs, hereinafter referred to as appellees, for themselves and all others similarly situated, filed a petition, which later was amended, against the officers and directors of Moses Hill Cemetery District of Phelps County and the district; the board of supervisors of Phelps County individually and as a board; Phelps County; the county clerk; and the county treasurer. The amended petition attacked the constitutionality of

the Rural Cemetery District Act, and prayed for an injunction against defendants, hereinafter referred to as appellants, from collecting any tax or levying any future tax or acquiring any property.

The material facts are not in dispute. On March 31, 1959, petitions for the formation of Moses Hill Cemetery District of Phelps County, Nebraska, hereinafter referred to as district, were filed with the county clerk. The petitions were signed by 138 resident freeholders. A map was attached, delineating the limits of the district. At its widest points, it is 15 miles long north and south, and 12 miles wide east and west. The north 7 miles are from 2 to 8 miles wide; the south 2 miles are 5 miles wide. We make this observation to indicate that adjoining sections were not included for reasons known only to the petitioners. Appellees in their brief suggest that the driving distance from one corner to another is more than 22 miles. On March 31, 1959, pursuant to section 12-903, R. R. S. 1943, the county clerk filed in her office a certificate determining that a majority of the resident freeholders in the proposed district had signed the petition. She then designated that the petitioners and other taxpayers of the proposed district meet on April 14, 1959, at the Moses Hill Church for the purpose of completing the organization of the district. Notice of the meeting appeared in the April 1 issue of the Holdrege Daily Citizen, a newspaper of general circulation in Phelps County. At the meeting, held as advertised, officers and directors were elected for the district. On July 2, 1959, a certificate, certified by the president and secretary of the district estimating the probable expense for the ensuing year, was filed with the county clerk. On August 27, 1959, the county board of Phelps County levied a tax of .12 mills upon the assessed value of all taxable property, except intangible property, in the district for the purpose of maintaining the district for the fiscal year 1959.

Appellants strenuously urge that the constitutional-

ity of a law cannot be raised by a motion for summary judgment. The only Nebraska case cited by either appellants or amici curiae to support appellants' position on this point is Peterson v. George, 168 Neb. 571, 96 N. W. 2d 627. No question of constitutionality was raised in that case. Further, we there stated: " 'The prerequisites of granting a summary judgment are that the movant establish that there is no genuine issue of fact in the case and that he is entitled to judgment as a matter of law.' "

Section 25-1330, R. R. S. 1943, provides as follows: "A party seeking to recover in district court upon a claim, counterclaim, or crossclaim or to obtain a declaratory judgment may, at any time after the filing of answer or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof." Appellants insist no claim is involved, and that appellees have not asked for a declaratory judgment. They are wrong on both points. The term "claim" as used in the statute is broader than appellants' inference, and includes an action for injunctive relief. Further, the prayer of the amended petition is for a declaratory judgment or determination that the district had no legal existence.

A motion for summary judgment is proper if the pleadings and admissions show there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. § 25-1332, R. R. S. 1943.

Appellants, in their reply brief, state as follows: "It would seem that all the pertinent information which could include records showing the intent of the Legislature, the various accomplishments which have been done under the scope of the law that is then being tested, and all the other facts, should be presented to the trial judge to give him all available information upon which he may base a decision of such great importance as to decide the fate of a law enacted by our Legislature."

We hold, from an examination of the pleadings and admissions, that there is no genuine issue of fact to be determined and that a motion for summary judgment was a proper pleading herein.

We quite agree with appellants that in an act of the Legislature, all reasonable doubt must be resolved in favor of constitutionality and that if a statute is subject to more than one construction, the court will adopt the one which will make the act constitutional. Hinman v. Temple, 133 Neb. 268, 274 N. W. 605, 111 A. L. R. 1217; Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729. These rules have no applicability to the facts herein.

In order to suggest a question on construction, appellants urge that the word "shall" be interpreted as permissive in order to uphold a legislative act. With this we do not agree. It is not the function of the courts to legislate. There may be occasions where it is apparent the word "shall" may have been used by inadvertence, and the rest of the act so indicates, in which case appellants' argument would have merit. However, that is not the case here. Section 12-903, R. R. S. 1943, reads as follows: "When a petition or petitions for the organization of a cemetery district has been signed and filed in accordance with section 12-902, the county clerk or clerks *shall* determine if a majority of the resident freeholders in the proposed district have signed the same and, if he or they find that they have, certify such fact. The county clerk *shall* thereupon designate a time and place for the petitioners and other taxpayers of the proposed district to meet at a place within such district to complete the organization. Notice of such meeting *shall* be given by one publication in a newspaper of general circulation in the county; Provided, that if the proposed district *shall* be within two or more counties, the county clerk of the county, wherein the largest number of petitioners thereon *shall* reside, *shall* fix the time and place for the organization meeting after he *shall*

have conferred with the clerk or clerks of the other counties interested in regard thereto and after the other clerk or clerks *shall* have certified as to the adequacy of the petition or petitions in that county." (Italics supplied.) The word "shall" is used eight times in this section. Which ones should we consider as permissive? Only the second one, as suggested by appellants?

There is no need for speculation. Section 12-903, R. R. S. 1943, was last amended in 1947. At the 1947 session, the Legislature enacted some general rules of construction. Section 49-802, R. R. S. 1943, so far as material herein, provides as follows: "Unless such construction would be inconsistent with the manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereafter enacted shall be as follows: (1) When the word may appears, permissive or discretionary action is presumed. When the word shall appears, mandatory or ministerial action is presumed." There is also a rule of statutory construction that: "A word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears." Seward County Rural Fire Protection Dist. v. County of Seward, 156 Neb. 516, 56 N. W. 2d 700.

Appellants would have us hold that the statute imparts discretion with the county clerk to question the boundaries, or to question whether the district would promote the public health, convenience, welfare, and necessity of the signers of the petition. To so hold would be judicial legislation in which we do not intend to indulge.

Appellants suggest that appellees will place considerable emphasis on Elliott v. Wille, on rehearing, 112 Neb. 86, 200 N. W. 347, and Summerville v. North Platte Valley Weather Control Dist., 170 Neb. 46, 101 N. W. 2d 748, and attempt to distinguish the situation in those cases from the Rural Cemetery District Act. We note those differences, which were visually presented in argu-

ment, but find them to be immaterial on the point in question.

In Elliott v. Wille, *supra,* we held: "A legislative act, which authorizes private individuals to create and fix the boundaries of a district for public improvement, to be paid for by taxes levied on the property within the district, without any provision for determination by a competent tribunal whether the creation of the district and the construction of the improvement will promote public health, convenience or welfare, and without any provision for determination whether the owner's property has been arbitrarily or unjustly included in the district, or whether his property will receive any benefit from the proposed improvement, is invalid because it authorizes the taking of private property for a public use without just compensation and deprives the owner of his property without due process of law.

"The legislature may not delegate to private individuals either legislative or judicial functions."

In the opinion in the case of Summerville v. North Platte Valley Weather Control Dist., *supra,* filed 2 weeks after the trial court sustained appellees' motion for summary judgment, we also held: "The Legislature may authorize the organization of districts for public purposes by other governmental bodies, and the proceeding may be proposed or initiated by private individuals.

"Where it is authorized to be initiated by private individuals, there must be some provision for determining whether the particular district is for the public health, convenience, or welfare, and a means by which an aggrieved property owner, whose property is injuriously affected, may have his rights judicially determined.

"The Legislature may not delegate legislative functions to private persons."

Amici curiae, in support of appellants' position, devote the major portion of their brief to the attempt to show that an adequate tribunal exists under the Rural Cemetery District Act. They suggest the board of equaliza-

tion is such a tribunal. What issue may the taxpayers present to the county board of equalization? Gerrymandering of boundaries? Arbitrariness of the inclusion of their property? Whether the district as a whole will benefit the public health, convenience, welfare, or necessity? Whether inclusion of their property does not benefit the public health, convenience, welfare, or necessity?

Section 77-1606, R. R. S. 1943, provides for an appeal from the county board of equalization if "* * * the levy is for an unlawful or unnecessary purpose, or in excess of the requirements of a county, * * *." May the levy be for a lawful and necessary purpose as to a portion of the district and yet not be for the complaining taxpayer? The answers to these questions are obvious. Certainly the arguments made by amici curiae are ingenious, but at best illusory, and serve to show the absolute failure of the act to afford petitioners the remedies necessary to meet constitutional requirements. We hold the act does not provide a tribunal to review the rights of property owners included within the district.

If we were to interpret section 12-903, R. R. S. 1943, as contended for by appellants, we would have an act fixing an arbitrary discretion in a public officer without specifying a guide or standard for the measure of such discretion. This would violate the constitutional provisions prohibiting undue delegation of legislative power and the taking of property without due process of law.

In passing, we note appellees' suggestion that there is no requirement in section 12-903, R. R. S. 1943, for notice of the organization meeting to be given a sufficient time before the meeting to advise interested parties thereof. Only one publication is required. Appellees suggest this publication might be 1 day before the meeting, and could not possibly advise residents who depended upon mail delivery of the newspaper. There is nothing in the act to prevent it. The constitutionality

of a law is to be tested by what the act authorizes and what may be accomplished by it. See Blauvelt v. Beck, 162 Neb. 576, 76 N. W. 2d 738.

It will be observed by reading sections 12-902, 12-903, and 12-905, R. R. S. 1943, and noting the procedure followed in this case which is in conformity with those sections, that the act is tainted with the principal defects in Elliott v. Wille, *supra,* and Summerville v. North Platte Valley Weather Control Dist., *supra.* We believe these cases are decisive of the constitutional issues here involved.

It is to be noted that the act permits the individuals who promote the petition to fix the boundaries of the district without limitation in any way. There is no provision in the act for a determination by a competent tribunal as to whether the creation of the district will promote the public health, convenience, or welfare, and necessity. There is no provision for determining whether owners of property have been arbitrarily or unjustly included within the district or others have been excluded from the district. There is no provision to provide a determination whether the interested parties' property can receive any benefit from the proposed district.

We hold the Rural Cemetery District Act violates Article I, section 3, Constitution of Nebraska, which provides: "No person shall be deprived of life, liberty, or property, without due process of law." It also violates Article I, section 21, Constitution of Nebraska, which provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." It further is in violation of Article III, section 1, Constitution of Nebraska, as an unlawful delegation of legislative functions to private persons.

For the reasons herein set forth, the judgment of the trial court is affirmed.

AFFIRMED.